UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA KIDWELL-BERTAGNOLLI, et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>COUNTY OF SONOMA, et al.,<br><br>       Defendants. | Case No.  20-cv-03291-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 13 |

Patricia Kidwell-Bertagnolli, Dwaye Bertagnolli, and Jane Besaw bring this wrongful death Section 1983 action against the County of Sonoma, the Sonoma County Sheriff's Office, Sheriff Mark Essick, Sheriff's Deputy Veronica Ordaz, and Does 1-20.  The action follows the tragic death of Geoffrey Wise Bertagnolli while in Sonoma County Sheriff's Office custody.  Defendants' motion to dismiss for failure to state a claim is now pending before the Court.[1]  (Dkt. No. 13.)  After carefully considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS IN PART and DENIES IN PART the motion to dismiss.  While Plaintiffs have adequately alleged a *Monell* claim and Ms. Kidwell-Bertagnolli a claim for negligent infliction of emotional distress, they have failed to adequately allege their numerous other claims.

## BACKGROUND

### A. Complaint Allegations

A little after midnight on September 9, 2019 Geoffrey Bertagnolli went to the top of the five-story parking garage at the Graton Casino and stood on the ledge of structure.  (Complaint,

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9 & 15.)

Dkt. No. 1 at ¶¶ 25-26.[2])  A casino security guard arrived on the scene and spoke to Mr. Bertagnolli for 30-40 minutes.  (*Id.* at ¶ 26.)  Mr. Bertagnolli "was visibly agitated, possibly under the influence, and verbalized suicidal thoughts."  (*Id.*)  Casino staff then contacted Ms. Kidwell-Bertagnolli who came to the casino "and made contact with her husband who remained suicidal."  (*Id.* at ¶ 27.)  Around 1:30 a.m. casino staff called the Sonoma County Sheriff's Office to "report a man on the top level of the parking structure that was exhibiting mental illness, erratic behavior, and appeared to be an ongoing suicide risk."  (*Id.* at ¶ 28.)

Half an hour later, Deputy Ordaz arrived along with several other officers.  (*Id.* at ¶ 29.)  When they reached the roof they found Mr. Bertagnolli "standing on the ledge with obvious symptoms of a me[n]tal health crisis and talking to his wife nearby."  (*Id.*)  "In a moment of distraction," they "tack[l]ed" Ms. Kidwell-Bertagnolli and Mr. Bertagnolli and got him off the ledge.  (*Id.*)  Despite the officers "physical custody" and "awareness of his troubled mental state" the officers "failed to take any appropriate or necessary action in the face of a clearly paranoid and suicidal detainee."  (*Id.*)  Instead, they "roughly handcuffed [him], forced him to sit on marked patrol vehicle's bumper, and provided him a cigarette."  (*Id.*)  Despite the officers' knowledge that Mr. Bertagnolli was an ongoing suicide risk, the officers "failed to adequately screen or perform a risk assessment," "failed to either summon or provide adequate medical assistance," "failed to diffuse his suicidal ideations or de-escalate the situation, failed to regulate [his] emotions, failed to remove [his] access to lethal means, failed to implement appropriate suicide prevention measures, failed to supervise or monitor [him, and failed to ensure [his] safety."  (*Id.* at ¶ 31.)

Approximately nine minutes after the officers arrived on scene, Deputy Ordaz conducted a pat down search of Mr. Bertagnolli "before attempting to place him into the vehicle's rear passenger seat"; however, when she "went to open the rear passenger door, she found it was locked."  (*Id.* at ¶ 32.)  While Deputy Ordaz was holding on to Mr. Bertagnolli with one hand so she could unlock the door, he "easily broke free" and "ran towards the parking structure ledge."  (*Id.* at ¶ 33.)  The other officers were "inattentive and distracted as they were engaged in

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.)

1 conversations, joking around and laughing instead of monitoring and safeguarding" Mr.
2 Bertagnolli "and failed to notice or react to Mr. Bertagnolli." (*Id.*) Mr. Bertagnolli jumped
3 headfirst over the edge of the garage wall to the ground below. (*Id*. at ¶ 34.) He was later
4 pronounced dead at the scene. (*Id*. at ¶ 35.)

### B. Procedural Background

Later that same day, Ms. Kidwell-Bertagnolli served a claim for damages with Sonoma County. (*Id*. at ¶ 39.) The County "failed or refused to act within 45 of days." (*Id*. at ¶ 40.) Mr. Bertagnolli's parents, Dwayne Bertagnolli and Jane Besaw served their claims for damages with the County on January 8, 2020. (*Id*. at ¶ 41.) The County likewise "failed or refused to act within 45 days." (*Id*. at ¶ 42.)

On May 14, 2020, Mr. Bertagnolli's wife, Ms. Kidwell-Bertagnolli, and his parents, Dwayne Bertagnolli and Jane Besaw, filed this action against the County of Sonoma, the Sonoma County Sheriff's Office, Sheriff Mark Essick, Veronica Ordaz, and Does 1-20. Plaintiffs plead eight claims for relief: (1) failure to protect from harm in violation of 42 U.S.C. § 1983 as to all Defendants; (2) deliberate indifference to serious medical and mental health needs in violation of 42 U.S.C. § 1983 as to all Defendants; (3) violation of substantive due process in violation of 42 U.S.C. § 1983 as to all Defendants; (4) municipal and supervisory liability in violation of 42 U.S.C. § 1983 as to the County, the Sheriff's Office, Sheriff Essick, and Does 11-20; (5) failure to provide reasonable accommodations in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. § 12132 and 29 U.S.C. § 794; (6) wrongful death-negligence; (7) negligent infliction of emotional distress in violation of Cal. Gov't Code § 829; and (8) violation of the Bane Act, Cal. Civil Code § 52.1. Defendants responded to the Complaint by filing the now pending motion to dismiss.

### DISCUSSION

Defendants move to dismiss the complaint on numerous grounds: (1) lack of standing to sue as successors in interest; (2) failure to state a claim against Sheriff Essick; (3) failure to allege a *Monell* claim; (4) failure to plausibly plead a supervisory liability claim; (5) failure to state a due process, ADA, negligent infliction of emotions distress, and Bane Act claim; and (6) state law

1  immunity under California Government Code §§ 845.8, 846.

2  **A.   Standing**

3  As a threshold matter, Defendants insist that Plaintiffs lack standing to bring many of their claims here.

Generally, a claim under 42 U.S.C. § 1983 survives the decedent if the claim accrued before the decedent's death, and if state law authorizes a survival action. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir.1998). "Under California law, if an injury giving rise to liability occurs before a decedent's death, then the claim survives to the decedent's estate." *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006) (citing Cal. Civ. P. Code § 377.30). If there is no personal representative for the estate, the decedent's "successor in interest" may prosecute the survival action if the person purporting to act as successor in interest satisfies the requirements of California law" *Tatum*, 441 F.3d at 1094, n.2 (citing Cal. Civ. P. Code §§ 377.30, 377.32). In contrast, a wrongful death action can be brought "by decedent's personal representative or any of a defined list of persons that includes a decedent's spouse, children, or heirs." *Moreland*, 159 F.3d at 370 (citing Cal. Civ. P. Code § 377.60(a)). "[P]arents may sue for the wrongful death of their child "if they were dependent on the decedent." *Chavez v. Carp*enter, 91 Cal. App. 4th 1433, 1445 (2001) (citing Cal. Civ. P. Code § 377.60(b)).

In connection with their opposition to the motion to dismiss, Plaintiffs submitted a successor-in-interest-declaration from Ms. Kidwell-Bertagnolli whereby she attests that she was Mr. Bertagnolli's spouse and that she is the successor-in-interest pursuant to Section 377.11. (Dkt. No. 18.) Mr. Bertagnolli's death certificate was attached to the declaration in accordance with Section 377.32. (*Id.* at 4.) Plaintiffs thus insist that Ms. Kidwell-Bertagnolli may maintain a survivorship action. Defendants counter that the suit is not brought on behalf of Mr. Bertagnolli's estate, but on Mr. Kidwell-Bertagnolli's behalf. Ms. Kidwell-Bertagnolli's standing to bring survival claims, that is, any that arise from a violation of Mr. Bertagnolli's constitutional rights

4

before he died is unclear.[3] Because the Court dismisses the majority of the claims for relief below with leave to amend, any amendment shall also address the standing issues.

**B.   Section 1983**

Plaintiffs plead four Section 1983 claims. The first three are for failure to protect from harm, deliberate indifference to medical needs, and substantive due process-interference with familial relationship and are pled as to all defendants. Plaintiffs' fourth Section 1983 claim for municipal and supervisory liability is pled as to all defendants except Deputy Ordaz. Defendants move to dismiss these claims on multiple grounds; however, Defendants have not moved to dismiss the failure to protect claim as to Deputy Ordaz.

**1)   Sheriff Essick**

Defendants insist that Plaintiffs' claims against Sheriff Essick must be dismissed because Plaintiffs have failed to allege a basis for liability to the extent that he is named in his individual capacity, and to the extent that he is named in his official capacity, the County is the proper defendant. The Court agrees.

A Section 1983 "official capacity suit against a municipal officer is equivalent to a suit against the entity." *Ctr. for Bio-Ethical Reform*, *Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. for Bio-Ethical Reform*,  533 F.3d at 799 (internal citation omitted). Because Plaintiffs also bring a *Monell* claim against the County and do no seek injunctive relief, their claim against Sheriff Essick in his official capacity is dismissed as redundant.

A supervisory official such as Sheriff Essick may be individually "liable under § 1983 so long as there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

---

[3] Plaintiffs do not appear to dispute that Mr. Bertagnolli's parents only have standing to bring a wrongful death negligence action based on their allegation that they "were dependent on DECEDENT, to some extent, for the necessities of life." (Complaint at ¶ 36.)

5

constitutional violation." *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal citation and quotation marks omitted). "The requisite causal connection can be established ... by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011). Accordingly, "a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez*, 891 F.3d at 798 (internal citation and quotation marks omitted).

Here, Plaintiffs' allegations regarding Sheriff Essick are all contained within their fourth claim for supervisory/municipal liability and are pled globally as to the County, the Sheriff's Office, Does 11-20, and Sheriff Essick. That is, Plaintiffs allege that all these Defendants "knowingly maintained, enforced and applied an official custom, policy, and practice" of inadequate training, mishandling and delaying mental health care, and failing to discipline or monitor officers. (Complaint at ¶ 80.) Plaintiffs also allege that all these Defendants were aware that Deputy Ordaz and Does 1-11 had not receive proper training and "repeatedly failed mandatory written, physical and oral sheriff's duty examinations, and that as a result of these deficient policies, practices and customs, five individuals died in Sheriff's Office custody in the last 12 years. (*Id*. at ¶¶ 81-83.) These allegations, however, do not indicate that Sheriff Essick was "directly involved in the allegedly unconstitutional conduct" which resulted in Mr. Bertagnolli's death or that "he had knowledge of the constitutional deprivations and acquiesced in them. Rather, the complaint makes conclusory allegations that [Sheriff Essick] promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused [Deputy Ordaz and Deputy 1-10's] allegedly unconstitutional conduct." *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (concluding that these allegations failed to state a claim for supervisory misconduct). So too here—these allegations are insufficient to state claim of supervisory liability against Sheriff Essick.

### 2) Doe Defendants

Plaintiffs plead claims against two categories of doe defendants. Does 1-10 are alleged to have been present at the time of the alleged constitutional violations and participated as integral participants and/or failed to intervene. (Complaint at ¶¶ 13, 29-34.) Does 11-20 are alleged to be liable in their capacity as managerial, supervisorial, or policymakers for the Sheriff's Office. (*Id.* at ¶¶ 14, 80-88.) To the extent Plaintiffs seek to state a claim for supervisory liability against Does 11-20 based on the same blanket allegations pled as to Sheriff Essick, Plaintiffs have failed to allege either that they directly participated in the alleged constitutional violation or that they had knowledge of and acquiesced in the alleged constitutional violations. As such, the claim for supervisory liability as to Does 11-20 fails for the same reason it fails as to Sheriff Essick. *See Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) ("A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.") (internal citation and quotation marks omitted).

Plaintiffs make claims against Does 1-10 based on an integral participation or failure to intercede theory. Liability under Section 1983 can arise based on an officer's "integral participation" in the alleged violation. *See Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996). The integral participation standard "does not require that each officer's actions themselves rise to the level of a constitutional violation. [ ] But it does require some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 492 n.12 (9th Cir. 2007) (citing *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004)). Alternatively, officers have a "duty to intercede" if they have an opportunity to intercede "when their fellow officers violate the constitutional rights of a suspect or other citizen." *Monteilh v. Cty. of Los Angeles*, 820 F. Supp. 2d 1081, 1092 (C.D. Cal. 2011) (internal citations omitted). Both theories of liability depend on an officer's active participation in or knowledge of the alleged constitutional violations. *See Jones v. Williams*, 297 F.3d 930, 936 (9th Cir. 2002) (noting that "merely [ ] being present at the scene of an alleged unlawful act" is insufficient for integral

7

participation); *Monteilh*, 820 F. Supp. 2d at 1092 (holding that an officer only has a duty to intercede if they "know or have reason to know of the constitutional violation.").

Plaintiffs allege that Does 1-10 arrived at the scene at the same time as Deputy Ordaz, that they and Deputy Ordaz "roughly handcuffed DECEDENT, forced him to sit on marked patrol vehicle's bumper, and provided him a cigarette" and that although they knew Mr. Bertagnolli "was an ongoing suicide risk," they failed to take measures to evaluate and protect him. (Complaint at ¶¶ 30-31.) According to the Complaint, only Deputy Ordaz was involved in the attempted transfer of Mr. Bertagnolli to the police vehicle and Does 1-10 "were inattentive and distracted as they were engaged in conversations joking around and laughing instead of monitoring and safeguarding DECEDENT" when he broke free of Deputy Ordaz and jumped off the parking structure to his death. (*Id*. at ¶¶ 32-33.) These allegations are not sufficient under either an integral participant or failure to intercede theory.

First, as to integral participation, it is not clear what constitutional violation Does 1-10 are alleged to have participated in. While the Complaint alleges they participated in the "rough[] handcuff[ing]" Plaintiffs have not pled an excessive force claim. To the extent that the claim is based on their integral participation in the deliberate indifference to Mr. Bertagnolli's serious medical and/or mental health needs, Plaintiffs' allegations are too conclusory to plausibly support liability. "Officers are fundamentally involved in the alleged violation when they provide some affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object." *Monteilh v. Cty. of Los Angeles*, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011) (citing *Boyd*, 374 F.3d at 780).

Second, Plaintiffs argue in their opposition that the failure to intercede claim is based upon "the Defendant Doe Officers' failure to notice or react, [that] Decedent ran by them and jumped over the ledge to his death." (Dkt. No. 19 at 15:23-25 (citing Complaint at ¶¶ 32, 34).) However, these paragraphs of the Complaint do not plausibly allege that Mr. Bertagnolli jumped because of the Doe Defendants' actions (or inaction). Nor do the allegations support Plaintiffs' argument that "it is clear that Sheriff Essick and the Defendant Doe Officers had a realistic opportunity to

1    prevent Decedent from committing suicide and failed to do so." (Dkt. No. 19 at 15:26-28.) The
2    Complaint does not allege facts that plausibly suggest Does 1-10 had a "realistic opportunity to
3    prevent" Mr. Bertagnolli's suicide—among other issues, it does not allege that the deputies were
4    standing in a location that would have allowed them to stop Mr. Bertagnolli from jumping over the
5    ledge or that they were aware of the risk that he might do so. Instead, the Complaint alleges that
6    the deputies were "distracted" and Mr. Bertagnolli was in Deputy Ordaz's custody. Bystander
7    officers only have a duty to stop a violation when they know or have reason to know of the
8    constitutional violation. *See Ramirez v. Butte–Silver Bow County*, 298 F.3d 1022, 1029–30 (9th
9    Cir. 2002) (holding that bystander officer could not be liable for failure to intercede in unlawful
10   search by fellow officers because he had no reason to know that the search warrant was defective).

Accordingly, Plaintiffs' claims against the Doe Defendants are dismissed.

**3)   *Monell***

To state a claim for municipal liability under Section 1983, a plaintiff must allege: (1) that the plaintiff was deprived of a constitutional right; "(2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted). There can be no municipal liability without an underlying constitutional violation. *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).

A *Monell* claim can proceed under three theories of municipal liability: "(1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct." *Brown v. Contra Costa Cty.*, No. C 12-1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010)). Whichever theory is alleged, the plaintiff must plead facts showing that "the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011); *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985)

9

1  ("At the very least there must be an affirmative link between the policy and the particular

2  constitutional violation alleged."). Further, "[p]roof of a single incident of unconstitutional activity

3  is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it

4  was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a

5  municipal policymaker." *Tuttle*, 471 U.S. at 823-24. That said, "[p]olicy or custom may be

6  inferred" by a policymaker's subsequent acceptance of unlawful conduct or failure to take

7  corrective action. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986).

8        As a threshold matter, Defendants do not appear to dispute that Plaintiffs have adequately

9  alleged a constitutional failure to protect from harm claim as to Deputy Ordaz.  The Court thus

10 only looks at whether Plaintiffs have adequately alleged a basis for *Monell* liability.  In this regard,

11 Plaintiffs allege that Defendants maintain 13 unconstitutional customs, practices, and policies

12 regarding encounters with "the mentally ill, persons with disabilities and suicidal individuals"

13 including (1) inadequate training for such encounters; (2) mishandling in custody situations; (3)

14 denying or delaying medical care; (4) failing to implement adequate suicide prevention measures;

15 (5) failing to supervise and monitor in-custody individuals who are at risk for suicide; (6)

16 employing and retaining individuals who the County knew mishandled in-custody individuals; (7)

17 inadequately supervising, training, controlling, assigning, and disciplining officers; (8)

18 maintaining "grossly inadequate procedures" for handling officer misconduct; (9) failing to

19 discipline officers for misconduct; (10) failing to adequately discipline officers; (11) ratifying

20 intentional misconduct by officers; (12) failing to properly investigate claims of mistreatment; and

21 (13) encouraging, accommodating, or facilitating a "blue code of silence."  (Complaint at ¶ 80.)

22 Plaintiffs also allege that Defendants were aware that Deputy Ordaz and Does1-10 had repeatedly

23 failed mandatory written, physical, and oral sheriff's deputy examinations including portions of

24 said exams addressing mentally ill individuals. (*Id*. at ¶ 82.)  Finally, Plaintiffs allege that

25 Defendants were aware that as a result of their deficient policies, practices, and customs five other

26 individuals committed suicide in Sheriff's custody. (*Id*. at ¶¶ 81-83.)

27       Taking these allegations as true as the Court must at this stage, Plaintiffs have adequately

28 alleged *Monell* claim. *See Cooley v. City of Vallejo*, No. 2:14-CV-0240 MCE DAD, 2014 WL

1334008, at *3 (E.D. Cal. Apr. 3, 2014) (collecting cases describing allegations necessary to state a *Monell* claim). Plaintiffs have alleged a number of policies, practices, customs regarding the handling of individuals which they allege caused the constitutional violation here, including that the deputy allegedly responsible for the constitutional violation was known to have failed exams regarding, among other things, how to handle persons with mental health problems, and that five other individuals have committed suicide in custody as a result of these policies and practices or lack thereof. Defendants' motion to dismiss the *Monell* claim is therefore denied.

### 4) Deliberate Indifference

A pretrial detainee's deliberate indifference/denial of medical treatment claim is governed by a Fourteenth Amendment objective standard and requires a showing that officers acted with deliberate indifference to his serious medical needs. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-1068 (9th Cir. 2016). In the Ninth Circuit, "the test for deliberate indifference consists of two parts": the plaintiff must first show a "serious medical need" and then that the "defendant's response [to that need] was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Defendant's response to the serious medical need is based on an objective standard which requires the pretrial detainee to show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Defendants insist that Plaintiffs have not met this standard because they have not alleged that Defendants committed any intentional act or failed to take an act to abate any risk to Mr. Bertagnolli's safety. The Court agrees. The Complaint alleges that Deputy Ordaz removed Mr. Bertagnolli from the ledge of the parking structure, handcuffed him, and was attempting to place him in her vehicle for transport. These allegations are insufficient to show that Deputy Ordaz was deliberately indifferent. *See Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) ("Before

11

it can be said that a prisoner's civil rights have been abridged, however, the indifference to his medical needs must be substantial. Mere "indifference," "negligence," or "medical malpractice" will not support this cause of action."). Accordingly, Defendants' motion to dismiss Plaintiffs' deliberate indifference claim is granted.

### 5) Substantive Due Process

The Ninth Circuit has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children. *See Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991). The same is true for a spouse. *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). "Official conduct that shocks the conscience in depriving parents [or a spouse] of that interest is cognizable as a violation of due process." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (internal citation and quotation marks omitted). "In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation [by the officer] is practical." *Id.* (internal citation and quotation marks omitted; alteration in original). "Where actual deliberation is practical, then an officer's deliberate indifference may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.*

In their opposition brief, Plaintiffs contend that Defendants conduct satisfies the purpose to harm standard because Mr. Bertagnolli was "unlawful[ly] detained," Defendants used "excessive force," Defendants "ignored" his medical needs, "humilitat[ed] and laugh[ed] at Mr. Bertagnolli, and failed to adopt "appropriate safeguards, and "allow[ed]" Mr. Bertagnolli to run past them and leap off the roof. (Dkt. No. 19 at 18:18-28.) Even if these allegations were supported by the Complaint, which they are not—since among other things the Complaint does not include an excessive force or unlawful detention claim—they would not plausibly satisfy the purpose to harm standard because it requires that the purpose of the officer's conduct was "to cause harm unrelated to the legitimate object of arrest." *Porter v. Osborn*, 546 F.3d 1131, 1140 (9th Cir. 2008). That is, the purpose to harm standard requires an "intent to inflict force beyond that which is required by a

12

1  legitimate law enforcement objective that 'shocks the conscience' and gives rise to liability under

2  § 1983...." *Id*. (internal citation omitted.) Plaintiffs' allegations here fail to satisfy this standard.

***

Accordingly, the Court grants Defendants' motion to dismiss the Section 1983 claims except as to the *Monell* claim.

**C.   ADA**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Ninth Circuit recognizes

> at least two types of Title II claims applicable to arrests: (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

*Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), rev'd in part on other grounds, cert. dismissed in part sub nom. *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015).  Plaintiffs allege the second type; namely, that the County and Sheriff's Office failed to accommodate Mr. Bertagnolli's disability because they (1) failed to establish proper policies and procedures for how to handle persons with disabilities; (2) failed to properly train officers regarding how to handle persons with disabilities; and (3) failed to provide crisis intervention officers.  (Complaint at ¶ 94.)

To state a Title II ADA claim a plaintiff must allege that "(1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entities services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability." *Sheehan*, 743 F.3d at 1232. In addition, to recover monetary damages

under Title II of the ADA, a plaintiff must establish intentional discrimination by the public entity. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) ("compensatory damages are not available under Title II...absent a showing of discriminatory intent"). Plaintiffs only seek monetary damages on their ADA claim.  (Complaint at ¶ 98.)

Defendants move to dismiss the ADA claim on the grounds that Plaintiffs do not plausibly allege intentional discrimination. Deliberate indifference—defined as "knowledge that a harm to federally protected right is substantially likely, and a failure to act on that likelihood"—qualifies as intent.  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2002). The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. *Id*. The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. *Id*. at 1139-40. The second prong is not satisfied if the failure to fulfill this duty to accommodate is a result of mere negligence, such as "bureaucratic slippage" or where the entity simply "overlooked" a duty to act. *Id*.

Plaintiffs insist that they have adequately alleged deliberate indifference because the Complaint alleges that Defendants, among other things, "exacerbated Decedent's fragile mental condition," "failed to adequately screen or monitor him," and "failed to properly secure and transfer him."  (Dkt. No. 19 at 22:14-27.)  The factual allegations of the Complaint, however, do not plausibly support an inference that Defendants engaged in intentional, rather than inadvertent, acts.  *See Duvall*, 260 F.3d at 1139 ("deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course. Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness.") (internal citation omitted).

Accordingly, Plaintiffs' ADA claim is dismissed.[4]

---

[4] While not addressed by Defendants' motion to dismiss, Plaintiff also brings a claim under the Rehabilitation Act. "[T]he Rehabilitation Act is materially identical to and the model for the ADA,

14

**D. State Law**

**1) Immunity**

Defendants insist that Government Code Sections 846 and 845.8 give them immunity from Plaintiffs' state law claims.

Under Government Code Section 845.8(b) "[n]either a public entity nor a public employee is liable for []Any injury caused by…An escaping or escaped arrested person; or [] A person resisting arrest." This immunity is absolute and applies to self-inflicted injuries. *See Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 919-20 (1996). It also applies where an arrest has not been effectuated and the individual is detained. *See Kisbey v. State of California*, 36 Cal. 3d 415, 419 (1984) ("It would plainly violate the legislative intent if particular words of the statute - such as "arrest" or "resisting" - were given such technical meanings that a case fell between the cracks of the immunity because, for example, the police had not intended a full arrest - as distinguished from a temporary detention - when the subject fled, or because at the time of the escape the process had not reached the point of physical control over the suspect."). Plaintiffs insist that Section 845.8 does not apply because Mr. Bertagnolli was neither an escaped or escaping prisoner, nor was he resisting arrest. Defendants, who bear the ultimate burden of proving their immunity affirmative defense, counter that where, as here, the decedent was being held pursuant to Welfare and Institutions Code Section 5150 as a danger to himself or others Section 845.8 applies. However, there are no allegations in the complaint about Mr. Bertagnolli being detained under Section 5150. Accordingly, while immunity may defeat the state law claims, the Court cannot definitively decide the issue at the pleading stage.

Under Government Code Section 846, "[n]either a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody." However, beyond citing the statute, Defendants do not make any argument

---

except that it is limited to programs that receive federal financial assistance – which the [California] prison system admittedly does...." *Armstrong v. Davis*, 275 F.3d 849, 862 n.17 (9th Cir. 2001) (citations and internal quotation marks omitted), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499 (2005). The basis for Plaintiffs' Rehabilitation Act claim against these municipal entities is unclear.

15

regarding its applicability. Neither *Kisbey* nor *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 933 (1996), on which Defendants rely for the immunity argument, address the parameters of Section 846 immunity or suggest that it has the same scope as Section 845.8 immunity. Thus, as the Complaint does not allege that Mr. Bertagnolli was under arrest or that Deputy Ordaz was attempting to effectuate his arrest when he broke away, the Court cannot say as a matter of law that Deputy Ordaz is entitled to Section 846 immunity.

Accordingly, Defendants have not shown as a matter of law that state statutory immunity applies.

### 2) Negligent Infliction of Emotional Distress

Under California law, to state a claim for negligent infliction of emotional distress for injuries inflicted upon a third person, a plaintiff must satisfy a three part test: plaintiff "(1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress-a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." *Bailey v. Cty. of San Joaquin*, 671 F. Supp. 2d 1167, 1177 (E.D. Cal. 2009) (quoting *Bird v. Saenz*, 28 Cal.4th 910, 915 (2002) (internal quotation omitted)). Ms. Kidwell-Bertagnolli alleges that she was present at the scene when her husband broke away from Deputy Ordaz's custody and dove to his death. (Complaint at ¶¶ 106-108.) As a result of the incident, Ms. Kidwell-Bertagnolli alleges that she suffered serious emotional distress including "anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame." (*Id*. at ¶ 109.) These allegations are sufficient to state a claim for negligent infliction of emotional distress.

### 3) Bane Act

The Bane Act, California Civil Code Section 52.1, provides a right to relief against anyone who "interferes by threats, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1. Thus, to state a claim under Section 52.1, a plaintiff must show "an attempted or completed act of interference

with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998).

Plaintiffs contend that they have stated a Bane Act claim because they allege that Mr. Bertagnolli was unlawfully detained, the deputies used excessive force, they ignored Mr. Bertagnolli's medical needs, they humiliated and laughed at him, and they failed to adopt sufficient safeguards to prevent him from committing suicide. Even if these allegations were enough to satisfy the requirement for a predicate constitutional violation—which they are not based on the unlawful arrest and excessive force since Plaintiffs have not pled Section 1983 claims based on either—Plaintiffs have failed to show that the constitutional violation was accompanied by threats, violence, or coercion. Accordingly, Defendants' motion to dismiss the Bane Act claim is granted.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion is granted as to all claims except Plaintiffs' *Monell* claim and the negligent infliction of emotional distress claim to the extent it is brought by Ms. Kidwell-Bertagnolli. Leave to amend the claims pled is granted; however, Plaintiff may not allege any new claims without first receiving the Court's permission. Any amended complaint is due within 21 days of this Order and shall specify which claims are brought on behalf of which plaintiffs.

The Court continues the Initial Case Management Conference to September 24, 2020 at 1:30 pm. A Joint Case Management Conference Statement is due September 17, 2020.

**IT IS SO ORDERED.**

Dated: August 20, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge